**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**GWYNN A. DONAHUE**                                                    **PLAINTIFF**

**V.**                                        **4:04CV655JMM**

**EURONET SERVICES, INC., AS PLAN**
**ADMINISTRATOR OF THE EURONET**
**SERVICES, INC., LONG TERM DISABILITY**
**PLAN; GE GROUP LIFE ASSURANCE COMPANY**
**(F/K/A PHOENIX LIFE INSURANCE COMPANY),**
**AS CLAIMS ADMINISTRATOR OF THE EURONET**
**SERVICES, INC., LONG TERM DISABILITY PLAN;**
**EURONET SERVICES, INC., LONG TERM**
**DISABILITY PLAN; AND UNUM LIFE**
**INSURANCE COMPANY OF AMERICA**                      **DEFENDANTS**

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND**
**GRANTING THE MOTIONS FOR SUMMARY JUDGMENT OF GE AND UNUM**

Pending is the Plaintiff's Motion for Summary Judgment of her claims against GE Group

Life Assurance Company (f/k/a Phoenix Life Insurance Company) ("GE") and Unum Life

Insurance Company of America ("Unum").  Defendants GE and Unum have each filed counter

motions for summary judgment.  For the reasons set forth below, Plaintiff's Motion is DENIED

and the motions of the Defendants GE and Unum are GRANTED.

Facts

Plaintiff was hired as a programmer and technical analyst by Defendant Euronet Services

Inc. ("Euronet") on January 4, 1999.  Her duties included product development and involved

tasks such as coding, debugging, and system testing.  According to Plaintiff's medical records,

she has had a history of problems with stress and depression.  Plaintiff's claims against the

Defendants revolve around her attempts to obtain disability benefits under Euronet's group

disability insurance plans.

Plaintiff's medical documentation begins with notes taken from a visit with her primary care physician, Dr. W. Kirk Riley on April 15, 1999.  The notes state that Plaintiff was seen for follow-up on her problems with stress and depression.  Plaintiff reported that she was doing reasonably well taking Serzone.  She also noted sleep disturbances.  Dr. Riley made an assessment of adult stress and recommended Plaintiff continue with medications. (UACL00053).

Plaintiff saw Dr. Riley again in September and December of 1999.  She complained of cervical and lumbar strain and spasm, and depression.  On these occasions, Dr. Riley changed Plaintiff's medication and excused her from work until January 3, 2000.  (UACL00050-UACL00052).  Dr. Riley did not see Plaintiff until September 29, 2000.  On this visit, she complained of abdominal pain but noted an improved stress level.  Dr. Riley noted that she was anticipating divorce and would need to continue her anti-depressant therapy through this time. Plaintiff saw Dr. Riley again on October 9, 2000.  On this visit, it was noted that she was "here basically for follow-up."  Plaintiff complained of problems getting out of bed and difficulty in taking her children to school.  It was noted that she missed some work.  Dr. Riley provided Plaintiff with an excuse for work and recommended counseling. (UACL00054).

Plaintiff returned to Dr. Riley on October 27, 2000 for a follow-up for her depression. Plaintiff was unsure her medications were working.  Dr. Riley added an additional medication and arranged for Plaintiff to see a psychiatrist.  (UACL00057).  On November 6, 2000, Plaintiff saw Dr. Carla Anderson for a rash.  Dr. Anderson was concerned by Plaintiff's depressive state and recommended that she see a psychiatrist as soon as possible.  Dr. Anderson took Plaintiff off of work for one week.  (UACL00056).

Plaintiff was also off work from November 13 through November 27, 2000 for medication adjustment at the direction of Dr. Richard Owings.  Dr. Gary Darwin excused Plaintiff from work again on January 14 through January 19, 2001.  However, no reason was given.

On January 24, 2001 Plaintiff presented to the Safe Harbor Behavioral Medical Clinic. She saw Dr. William Collie.  At that visit, Plaintiff complained of problems associated with depression.  (UACL00131-UACL0032).  Plaintiff saw Dr. Collie again on January 26, 2001.  He noted that Plaintiff appeared more alert and bathed but that her hair was extremely unkempt. (UACL00133).  Plaintiff requested a note to return to work and Dr. Collie provided her with one stating that she was much clearer mentally and exhibited more self-control.  (UACL00128).

Plaintiff was again treated at Safe Harbor Behavioral Medical Clinic on January 30, 2001.  She related anger and irritability but mentioned the need for a note to return to work.  The following day, Plaintiff saw Dr. Riley.  At that time, she had been off work for approximately three weeks and wanted to return to work indicating that she felt much more calm and in control. Dr. Riley noted her improved condition and provided Plaintiff with a note to return to work on February 1, 2001.

On February 7, 2001, Plaintiff was again treated at the Safe Harbor Behavioral Medical Clinic.  On this visit, Plaintiff was nicely dressed but with no make-up and hair unkempt. Plaintiff expressed a need to get a hair cut.  A nurse noted that Plaintiff was "encouraged . . . to improve her appearance for work especially since her job stability is in question." (UACL00136).  Plaintiff returned to Safe Harbor Behavioral Medical Clinic on February 15, 2001.  On this visit, the nurse noted that Plaintiff was nicely dressed with make-up and combed

hair.  They discussed the positives that Plaintiff had been arriving to work on time, was

organized, and able to think long-term.  (UACL00138).

Plaintiff saw Dr. Riley again on April 19, 2001.  On this visit, she complained of

headache and depression.  Dr. Riley noted that she had been off work since March 28, 2001.

(UACL00058).  He provided Plaintiff with an excuse for work stating "[h]as been treated for

chronic depression and has been unable to work since 3/28/2001.  Unlikely will be able to return

to work before 5/4/2001 until further evaluation." (UACL00008).  Euronet's employment

records indicate that Plaintiff was off work from March 27 through March 29, 2001 for

"vacation-eye surgery."  (UACL00064).  Euronet records note that Plaintiff took vacation on

March 30, 2001 and did not return to work from April 2 through April 13, 2001.  (UACL00063,

UACL00011).

On April 25, 2001, Plaintiff self-referred to Professional Counseling Associates.  In her

intake screening, the therapist commented: "This is a reopen for Gwynn.  She first presented to

PCA back in 1990.  At that time she was here for intake only.  Did not return for any treatment.

Her diagnosis at that time was adjustment disorder with mixed emotional features.  No diagnosis

on axis 2.  She had a GAF of 62 at the time."  (UACL00078-UACL00080).  Plaintiff saw Dr.

Richard Flanigin of Professional Counseling Associates on April 30, 2001.  He diagnosed

Plaintiff with major depressive disorder and attention deficit disorder with mixed features.  He

recommended medications and continuation of therapy.  Plaintiff was scheduled for a follow-up

in four weeks.  (UACL00081-UACL00082).

On May 1, 2001, therapist Laima Smith of Professional Counseling Associates authored

two letters indicating that Plaintiff suffered from major depression and stating "that these above

symptoms incapacitated her ability to work and perform daily activities." (UACL00009). Ms. Smith's second letter stated that Plaintiff would need to be off of work for an undetermined amount of time." (UACL00010). Plaintiff continued treatment with Professional Counseling Associates from June through August of 2001. (UACL00083-UACL00089).

On July 22, 2001 Plaintiff saw Dr. Paul Wylie. Dr. Wylie ordered that Plaintiff undergo a sleep study. (AR0461-AR0463). Plaintiff also saw Dr. Jackie Coombe-Moore for an evaluation. Dr. Moore referred Plaintiff to Cheralyn Powers, Ph.D., for a return to work evaluation. Plaintiff met with Dr. Powers on September 25, 2001, October 26, 2001, and November 13, 2001. Dr. Powers identified numerous diagnoses, including narcolepsy, chronic headaches, chronic fatigue, anxiety disorder, cognitive disorder, bipolar disorder, and many more. (AR0442-AR0444).

On March 11, 2002, Plaintiff ceased working and sought FMLA leave which was approved by Euronet. Dr. Flanigin again treated Plaintiff on March 27, 2002. Plaintiff returned to work on or about December 20, 2001. However, she stopped working in March 2002 and again took FMLA leave. At the end of her FMLA leave on June 10, 2002, Plaintiff was terminated by Euronet.

Euronet administered a group disability plan for its employees. Unum issued the group insurance policy to Euronet until April 30, 2001 that provided short term disability ("STD") and long term disability ("LTD") benefits to qualifying plan participants. The plan was governed by ERISA. Plaintiff was a plan participant. Effective May 1, 2001, however Defendant GE became the insurer of Euronet's short and long term disability insurance policy.

On August 7, 2001, Unum received Plaintiff's claim for short term disability benefits. In

her Claimant's Statement she described her sickness as "depression," "bi-polar," which

began in September of 2000" and stated that it became worse.  She noted that she "tried to work"

but was "not efficient."  Plaintiff listed the date of the disability onset as March 27, 2001.

(UACL00225).  Dr. Riley provided the Attending Physician's Statement which stated that he

diagnosed Plaintiff with bi-polar disorder and malaise.  He listed his objective findings as "loss

of train of thought," "flight of ideas," and "depressive mood."  He stated restrictions of "loss of

ability to function in present capacity" and "loss of concentration and thought process."  He

further noted limitations of "symptoms currently unchanged" and "still not capable of doing

clerical work."  Dr. Riley described Plaintiff's return to work prospects as "undetermined."

(UACL00226).  Euronet provided Plaintiff's Employment Statement.  In it, Euronet listed

Plaintiff's last day worked as March 26, 2001.  (UACL00224).

On August 15, 2001 Unum forwarded Plaintiff's medical records to clinical consultant,

Joe Neale.  Mr. Neale reviewed the available records and concluded that "there is no objective

information in the record that supports work restrictions."  He recommended obtaining records

from Plaintiff's medical doctor and therapist.  (UACL00024).  After retrieving additional

medical records, Unum forwarded the records to Mr. Neale for further review.  He determined

"it reasonable to support the claim for the administration and adjustment of new medications.

However, beyond 4/15/01 there is no information that supports the EE's claimed inability to

work."  (UACL00030, UACL00032).  On August 22, 2001, the representative handling

Plaintiff's claim spoke with Mr. Neale who related that he could only support Plaintiff's claim

for two weeks and only for adjustment of medications.

Unum denied Plaintiff's claim on September 6, 2001.  (UACL00098-UACL00099).  In

its denial letter, Unum's representative explained that Plaintiff's last day worked was March 27, 2001 and further explained that vacation was taken on March 28 and 29, 2001. "Because you were no longer in an eligible group as of 3/29/2001, your coverage ended." (UACL00099). Additionally, the representative noted that Plaintiff was not seen by a doctor from the period March 29, 2001 through April 19, 2001 and that no benefits were payable. (UACL00099).

Plaintiff appealed the denial of her claim to Unum on October 16, 2001. (UACL00104). Additional record requests were made by Unum on October 29, 2001. (UACL00110-UACL00111). On that same date, Unum's appeal specialist telephoned Euronet. Euronet's representative noted that Plaintiff had used all of her family medical ("FMLA") leave prior to ceasing work. (UACL00107). Unum forwarded Plaintiff's additional medical records to Latisha Hailes, RN, BSN for a clinical review. Nurse Hailes conducted an inventory of Plaintiff's available records and determined that the information supported impairment after June 29, 2001. Specifically, Ms. Hailes commented: "Dr. Riley identified R&Ls on the APS but the file does not reflect observations by his office to support. There does not appear to be observations by the other treatment providers to support the c/o of memory impairment, difficulty with concentration, or problems with thought processes, but her complaints are for the most part consistent among tx providers." (UACL00149-UACL00152).

On November 19, 2001, clinical psychologist Dr. David Goldsmith also conducted a review of Plaintiff's records and concurred with Ms. Hailes. "I have reviewed Latisha Hailes' thoughtful analysis and summary, as well as the clinical information of the claim file. I agree with Ms. Hailes' impressions, findings and conclusions." (UACL00148).

Unum upheld its denial of Plaintiff's claim on December 5, 2001. In doing so, Unum's

appeal specialist explained:

> The elimination period regarding your claim for STD benefits would have been March 30, 2001 through April 13, 2001.  Based on the medical review and the above outlined plan provisions a determination was made that your were not disabled as defined under the group plan and were not precluded from returning to work on March 30, 2001 and no benefits were payable.

> The claims determination also advised that you were no longer in an eligible group and your coverage ended.  This was based upon your not returning to work on March 30, 2001.

> During the appellate process, additional medical records were submitted from Dr. Collie.  Per the file documentation Dr. Collie treated you prior to the date you ceased working.  This last office visit with Dr. Collie is noted to be February 15, 2001.

> Our medical department completed a medical review of all the medical documentation within your claim file.  In this review it is noted you have had a long history of mental illness, but the progress notes do not reflect a severe disabling condition.  The medical data provided by Dr. Riley does not support restrictions and limitations to preclude you from performing the material and substantial duties of your regular occupation from the date you ceased working and through the contracts elimination period.

> Unfortunately, we must uphold the claims decision to deny your STD claims for benefits.  (UACL000156-UACL000157).

Unum's appeal specialist telephoned Plaintiff and explained the denial of her appeal.

Plaintiff was also offered the opportunity to submit additional information to support her

disability.  Plaintiff requested copies of all documents contained in her claim file on December

13, 2001.  Unum mailed additional medical information contained within Plaintiff's claim file on

December 17, 2001.

On April 2, 2003, Plaintiff contacted Unum to inquire about long term disability

coverage.  Unum's representative referred Plaintiff to her employer for enrollment information.

Thereafter, Plaintiff filed a complaint against Unum with the Arkansas Insurance Department.

On June 20, 2002, Plaintiff completed an application for long term disability benefits

with Defendant GE.  (AR00284-AR00285).  On November 14, 2002, GE denied Plaintiff's claim

based upon the pre-existing condition exclusion contained in the policy.  (AR00148-AR00151).

On December 6, 2002, Plaintiff appealed GE's denial of benefits.  GE never responded to this

appeal.

Plaintiff filed a Complaint in this Court on July 8, 2004 seeking disability benefits for

past periods of disability and disability benefits for the future, plus interest, costs and attorneys'

fees.

<u>Standard of Review</u>

ERISA provides for judicial review of disability benefit denial decisions.  The Supreme

Court has recognized that a deferential standard of review is appropriate under 29 U.S.C. §

1132(a)(1)(B), if "the benefit plan gives the administrator or fiduciary discretionary authority to

determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber*

*Co. v. Bruch*, 489 U.S. 101, 115 (1989). The Unum Plan provides: "When making a benefit

determination under the policy, UNUM has discretionary authority to determine your eligibility

for benefits and to interpret the terms and provisions of the policy."  (UACL00296).   In other

words, the Plan gives discretion to Unum.  Therefore, the decisions of Unum are subject to

review for abuse of discretion by this Court.  *King v. Hartford Life and Acc. Ins. Co.*, 414 f.3d

994 (8th Cir. 2005).

However, the Plaintiff argue that the Court must apply a sliding scale review because of

the procedural error/conflict of interest analysis under *Woo v. Deluxe Corp.*, 144 F.3d 1157,

1160-01 (8th Cir. 1998).  The Eighth Circuit has held that some less deferential standard of

review is triggered where the plaintiff presents "material, probative evidence demonstrating that

(1) a palpable conflict of interest ... existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to her." *Woo,* 144 F.3d at 1160.  It is only after a plaintiff clears this initial "two-part gateway requirement," that a court should apply the "sliding scale approach." *Id.* at 1161.

Plaintiffs claim that the Defendant Unum has a conflict of interest because it is the administrator and insurer of the life insurance policy and, therefore, the Defendant derives a financial benefit when it denies a claim.  The Eighth Circuit has stated, "As a general matter, when the insurer is also the plan administrator, we have recognized something akin to a rebuttable presumption of a palpable conflict of interest." *See Barnhart v. UNUM Life Ins. Co.,* 179 F.3d 583, 587-88 (8th Cir.1999).  Indicia of bias can be negated by ameliorating circumstances, such as an equally compelling long- term business concern that militates against improperly denying benefits despite the dual role or a situation where the insurer/administrator is a non-profit entity that does not have a direct profit motive in denying claims.  *See Farley v. Arkansas Blue Cross & Blue Shield,* 147 F.3d 774, 777 (8th Cir.1998)); *Schatz v. Mutual of Omaha Ins. Co.,* 220 F.3d 944, 947 -948 (8th Cir. 2000).

Defendant Unum has not responded to Plaintiffs' contention that it has a financial conflict of interest, much less provided any evidence of ameliorating circumstances.  Therefore, the Court must find that the Defendant has a palpable conflict of interest and, thus, the first prong of the *Woo* test is satisfied.  However under *Woo*, Plaintiffs must also show the conflict caused a serious breach of the Defendant's fiduciary duty.  "The alleged breach must be significant to trigger a less deferential review.  This second prong presents a considerable hurdle for plaintiffs." *Schatz v. Mutual of Omaha Ins. Co.,* 220 F.3d 944, 948 (8th Cir.2000) (quoting

*Barnhart v. UNUM Life Ins. Co.,* 179 F.3d 583, 588 n. 9 (8th Cir.1999)).

In this case, Plaintiff argues that Unum committed a serious breach of fiduciary duty when it failed to seek an independent medical review of Plaintiff's case and, instead, relied on one in-house psychologist's opinion. There is also evidence in the record that Unum did not communicate its findings that its consultant, Joe Neale, found Plaintiff disabled for a two week period while one of her doctors was adjusting her medication. However, Unum is under no obligation to do an independent medical review in cases where the medical evidence relied upon by Plaintiff was on its face insufficient to support a conclusion that she was totally disabled. *Layes v. Mead Corp.,* 132 F.3d 1246, 1251 (8th Cir. 1998). Further, the fact that Plaintiff was found disabled for the period of March 30, 2001 to April 13, 2001 did not change Unum's decision as to Plaintiff's eligibility for benefits. The Defendant was prompt and conducted a reasonable review of the facts. Therefore, the Court finds no evidence that the Defendant committed a "serious" breach of its fiduciary duty. Thus, the deferential standard of review is appropriate as to Unum in this case.

As for Defendant GE, Plaintiff also argues that there is no language in the GE Plan granting discretionary authority and, therefore, the Court should conduct a de novo review. The GE Plan provides: "GE Group Life Assurance Company is a fiduciary, as that term is used in ERISA . . . . In that capacity, GE Group Life Assurance Company is charged with the obligation, and possesses discretionary authority to make claim eligibility and other administrative determinations regarding these plans, and to interpret the meaning of plan term and language." (UACL00296). In other words, the Plan gives discretion to GE. Therefore, the decisions of GE are subject to review for abuse of discretion by this Court. *King v. Hartford Life*

*and Acc. Ins. Co.*, 414 f.3d 994 (8th Cir. 2005).

In applying an abuse of discretion standard, the reviewing Court must affirm if a "reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision."  *Ferrari v. Teachers Ins. and Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002).  A reasonable decision is one based on substantial evidence that was actually before the plan administrator.  Substantial evidence is defined as "more than a scintilla but less than a preponderance."  *Schatz v. Mutual of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000).  A reviewing court may consider both the quantity and the quality of evidence before a plan administrator.

UNUM

A.      Statute of Limitations

Unum argues that Plaintiff's claim is barred by the three year statute of limitations provided by the disability plan at issue.  In the Eighth Circuit, a "claim for ERISA benefits is characterized as a contract action for statute of limitations purposes" and the court looks to state law to provide the statute of limitations.  *Williams v. Continental Cas. Co.,* 2006 WL 1307741, *2 (E.D. Ark. 2006)(quoting *Bennett v. Federated Mut. Ins. Co.,* 141 F.3d 837, 838 (8th Cir. 1998)).  As in the *Williams* case, the Unum policy provides for a three year statute of limitations for filing legal actions based upon the policy.  This is shorter than the applicable five year statute of limitations found in Arkansas for contract actions.  However, parties may contract for a shorter limitation period "so long as the stipulated time is not unreasonably short and the agreement does not contravene some statutory requirement or rule based upon public policy."  *Id.* (citing *Ferguson v. Order of United Commercial Travelers of Am.,* 821 S.W.2d 30, 32 (Ark.

12

1991).  Three years has been found by Arkansas courts to be reasonable and does not contravene any statutory requirement or public policy. *Hawkins v. Heritage Life ins. Co.,* 973 S.W.2d 823 (Ark. 1998).

The Unum policy provides that a claimant can start legal action regarding a claim "60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law."  (UACl00208).  Under the policy, written proof of disability is to be submitted within 30 days of the date of onset of the disability and no later than 90 days after the elimination period.  However, "[i]f it is not possible to give proof within 90 days, it must be given *no later than 1 year* after the time proof is otherwise required except in the absence of legal capacity."  (UACL00217)(emphasis added).  Plaintiff filed her claim on August 7, 2001 within one year of the date of onset of disability.

The district court in *Williams* also looked at similar limiting language in its ERISA policy.  The court reasoned:

> . . . [I]t is beyond belief that the parties could have understood "the date written proof is required" to mean sometime *after* the final appeals decision was made denying a claim for benefits.  For the policy to make any sense, the parties must have intended that [the insurer] would have written proof of loss before making a decision.  Thus, the only reasonable interpretation of the policy in this case is that written proof of loss is required sometime *before* the final appeals decision on the plaintiffs' benefits claims.

*Id* at *3.

Unum denied Plaintiff's appeal December 5, 2001.  Plaintiff filed suit naming Unum, GE and Euronet as defendants on July 8, 2004, within three years of Unum's final appeals decision[1]

---

[1]  Unum claims that Plaintiff did not name Unum as a defendant until August 12, 2004. However, Plaintiff actually included Unum as a defendant in her Original Complaint filed July 8, 2004.  Plaintiff merely added additional claims and information against Unum on August 12, 2004.

and within three years of the date written proof of Plaintiff's claim was required under the

policy.  Therefore, Plaintiff's claim is not barred by the statute of limitations.

       B.    <u>Eligible Group</u>

       To be eligible for benefits under the Unum short term disability plan, Plaintiff must have

been continuously disabled through the elimination period of 14 days following March 27, 2001

and in an "eligible group."  Eligible group is defined in the policy as "All Employees in active

employment."  (UACL00221).

> Active employment means you are working for your Employer for earnings that are paid
> regularly and that you are performing the material and substantial duties of your regular
> occupation.  You must be working at least the minimum number of hours as described
> under Eligible Group(s) in each plan. . . .  Normal vacation is considered active
> employment.

(UACL00185).

       Defendant contends that Plaintiff was not in an eligible group under the policy after

March 30, 2001 because that was her last day of work, or vacation, and the last day that she was

paid.  However, the policy also states: "If you are on a **leave of absence**, and if premium is paid,

you will be covered through the end of the month that immediately follows the month in which

your leave of absence begins."  (UACL00208).  "Leave of absence" is defined in the policy as:

> **LAYOFF** or **LEAVE OF ABSENCE** means you are temporarily absent from active
> employment for a period of time that has been agreed to in advance in writing by your
> Employer.  Your normal vacation time or any period of disability is not considered a
> temporary layoff or leave of absence.  (UACL00184).

The Court finds that Plaintiff has failed to prove she was on a "leave of absence" as that term is

defined in the Unum policy.  Further, even if Plaintiff was on FMLA leave beginning April 1,

2001, the policy states that a period of disability is not considered a leave of absence.  Therefore,

Plaintiff was not in an eligible group after March 30, 2001, her last day of active employment

with Euronet and was not eligible for disability benefits from Unum after that date.

Moreover, the Court finds that even if Plaintiff were found to be in an Eligible Group and had been "disabled" through the Elimination Period, Unum did not abuse its discretion in denying Plaintiff disability benefits.  There is insufficient objective medical evidence to support a finding that Plaintiff is disabled as defined by the Plan during the time she was eligible for coverage by Unum, i.e., through April 2001.

 "It is not unreasonable for a plan administrator to deny benefits based upon a lack of objective evidence." *McGee v. Reliance Standard Life Ins. Co.*, 360 F.3d 921, 925 (8th Cir. 2004); *see also Pralutsky v. Met. Life Ins. Co.*, 435 F.3d 833, 2006 WL 130935, at *4-5 (8th Cir. Jan.19, 2006). As stated, there is no evidence of Plaintiff's medical treatment in the record from February 15, 2001 until April 19, 2001 when Plaintiff saw her primary care physician, Dr. Riley. Dr. Riley provided Plaintiff with an excuse from work which he backdated to March 28, 2001 even though he had not seen her at that time.  He stated she had been treated for "chronic depression" and that it "would be unlikely that Plaintiff could return to work until May 4, 2001." (UACL00008).  There is no evidence regarding Plaintiff's limitations or restrictions at this time.


Plaintiff began treatment with Dr. Flanigin of Professional Counseling Associates on April 25, 2001.  During her 2001 visit, Dr. Flanigin diagnosed Plaintiff with major depressive disorder, moderate, recurrent, risk of bi-polar disorder type II, attention deficit disorder and back pain (UACL00081-UACL00082).  He recommended medications and continuation of therapy and scheduled a follow-up visit in four weeks.  There was no indication from Dr. Flanigin at this time that Plaintiff was unable to work or disabled.  As for Plaintiff's mental status examination,

Dr. Flanigin observed "no abnormal movements. . . . Her mood was 'okay.' Her affect was somewhat constricted and non-labile. Thought process was somewhat logical but somewhat poorly goal directed. She was easily redirected with coaxing. There was no flight of ideas. There was no evidence of auditory or visual hallucinations and no homicidal or suicidal ideation. Speech was generally unremarkable and non-pressured. Judgment and insight were felt to be good as she was seeking additional help in dealing with her difficulties." (UACL00081-UACL00082).

As stated, Unum submitted Plaintiff's file and the additional medical records received to Latisha Hailes, RN, BSN, for review. Nurse Hailes determined that Plaintiff's medical evidence supported a disability after June 29, 2001. However, the medical evidence was not sufficient to support Plaintiff's claimed disability prior to that date. Clinical Psychologist David Goldsmith also reviewed Plaintiff's records and concurred with Nurse Hailes' conclusion.

Although mindful of Plaintiff's self-reported complaints and the opinion of Plaintiff's primary care physician that depression had rendered her disabled, Unum was nevertheless entitled to rely on the opinions of the reviewing physician who gave a contrary opinion. The "treating physician rule"-that opinions of treating physicians must be accorded special weight-does not apply to disability benefit determinations under plans governed by ERISA. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003).

<u>GE</u>

Plaintiff applied for long term disability benefits with GE on June 20, 2002 based upon her diagnoses of mental illness and narcolepsy, including major depression. GE denied the claim

16

based upon the pre-existing condition exclusion in the policy.   Plaintiff argues that the pre-existing condition exclusion relied upon by GE does not apply because Plaintiff is eligible for the Prior Service Credit.

First, the Court must determine whether Plaintiff was suffering from a pre-existing condition when she applied for LTD benefits with GE on June 20, 2002.  Pre-existing Condition is defined as:

> A Sickness or Injury for which you, during the Treatment Free Period (as shown in the INSURANCE SCHEDULE) before the effective date of your insurance under the policy:
> 1.     Received medical care, treatment or consultation, diagnosis or diagnostic tests; or
> 2.     Took any drugs, medicine or medication prescribed or recommended by a Physician.  (AR0038).

The Insurance Schedule provides that the Treatment Free Period under the applicable policy is 3 months.  In other words, if Plaintiff was seen by a physician for medical care or treatment or took any medication prescribed by a physician during the 3 months prior to the effective date of her insurance with GE, her alleged disability was a pre-existing condition.

There is a dispute between Plaintiff and GE as to Plaintiff's effective date of insurance under the policy.  Plaintiff claims the effective date of her GE policy was May 1, 2001, the date GE became Euronet's LTD insurer.  GE contends that Plaintiff's effective date of individual insurance was December 20, 2001.  After review of the policy, the Court finds that December 20, 2001 was the effective date of Plaintiff's coverage under the GE policy.

When GE became the insurer on May 1, 2001, Plaintiff was not actively working at Euronet.  Therefore, Plaintiff was not eligible for coverage under the GE policy on that date. (AR0033).  However, assuming Plaintiff was still an "employee" of Euronet on May 1, 2002,

and she was on leave during the time between March 31, 2001 until December 20, 2001,[2] GE

contends Plaintiff's coverage terminated under the Termination Provisions contained in the

policy. (AR0054). This provision states that GE LTD coverage terminates on:

> the date your leave of absence begins, except if you are on an approved leave of absence granted in accordance with a State Family Leave Law or the Federal Family and Medical Leave Act (FMLA), your coverage will be deemed to continue, provided premium payments are made and continuation of coverage during this leave is based upon a uniform policy of your Employer and not individual selection, for the lesser of the duration of the approved leave or 4 months from the last day of active work. . . .

(AR0054). In accordance with this provision, GE determined that Plaintiff was on FMLA leave

for 4 months following Plaintiff's last day of active work on March 31, 2001. Based upon this

liberal determination, Plaintiff's coverage under the GE policy terminated on July 31, 2001, 4

months from her last day of active work. Plaintiff returned to work at Euronet on December 20,

2001 and was again covered under the GE plan on that date. Therefore, her effective date of

coverage under the plan was December 20, 2001.

In order to qualify for LTD benefits when she claimed them in 2002, Plaintiff had to be

"treatment free" for 3 months prior to her effective date of coverage under the plan. In other

words, Plaintiff had to be treatment free from September 20, 2001 until December 20, 2001. She

was not. Plaintiff received medical treatment from Dr. Powers on September 25, 2001, October

26, 2001 and November 13, 2001. (AR00442). Dr. Powers indicated in her notes that Plaintiff

suffered from narcolepsy, chronic headaches, chronic fatigue, anxiety disorder, cognitive

disorder, and many more. She also noted that Plaintiff was taking Xanax, Dexedrine,

---

[2] Plaintiff was on leave from employment with Euronet during this time. However, the Court has already found that Plaintiff's leave was not a "leave of absence" as defined under the Unum policy.

Desipramine, and Estratest.  (AR00442).   These medications are indicated for the treatment of

depression, anxiety and sleep disorders.  Accordingly, the Court finds that Plaintiff's alleged

disability was caused by a Pre-existing Condition, as that term is defined under the GE policy, on

June 20, 2002 when she applied for LTD benefits.

> The pre-existing condition exclusion in the GE policy states:
> Long Term Disability Benefits will not be paid:
> > \* \* \*
> 3.   For any Period of Disability which is caused by, contributed to by, or results from a Pre-existing Condition, unless otherwise stated in the INSURANCE SCHEDULE.  This exclusion, however, will not apply:
> > > \* \* \*
> > b)   if you are eligible for the Prior Service Credit as described below in the "Limitations" section.

(AR0048).

> The Prior Service Credit provision states:

> 1.   We will pay benefits under this plan for a Period Of Disability that is caused by, contributed to by, or results from a Pre-existing Condition subject to the following conditions:

> > a)   you were insured under the Prior Policy on a premium paying basis on the day before the effective date of this plan;
> > b)   you became insured under this plan on its effective date; and
> > c)   you can satisfy the greater of the Pre-existing Condition requirements of this plan or the Prior Policy after we combine the periods of time you were insured before the start of your Disability under:
> > > i)    the Prior Policy; and
> > > ii)   this plan.

(AR0049).

GE contends that Plaintiff cannot fulfill the Prior Service Credit provision because she

was not insured under the Prior Policy on a premium paying basis on the day before the effective

date of the GE policy, i.e., April 30, 2001.  The Court agrees.  As stated above, Plaintiff was not

in an Eligible Group under the Unum policy after March 30, 2001.  Therefore, she was not

insured under the Unum policy on April 30, 2001 as required to fulfill the Prior Service Credit provision in the GE policy.  Plaintiff does not fulfill the Prior Service Credit provision of the GE policy and, thus, the Court finds that Plaintiff is excluded from LTD benefits under the GE policy based upon the Pre-existing Condition exclusion.

Conclusion

For these reasons, Plaintiff's Motion for Summary Judgment of claims against Defendants Unum and GE (Docket # 14) and Plaintiff's Motion to Remand to Unum (Docket # 39) are DENIED.  The Cross Motion for Summary Judgment filed by GE (Docket # 27) is GRANTED. The Cross Motion for Summary Judgment filed by Unum (Docket # 30) is GRANTED.  Euronet Services, Inc., as Plan Administrator of the Euronet Services, Inc., Long Term Disability Plan and Euronet Services, Inc., Long Term Disability Plan are the only defendants remaining in the case.

IT IS SO ORDERED this 11th day of January 2007.

_____
James M. Moody
United States District Judge